IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION


ELLEN L. MORRIS,
     Plaintiff,

vs.                                Case No.: 5:11cv55/RH/EMT

MICHAEL J. ASTRUE,
Commissioner of the
Social Security Administration,
     Defendant.
_____/

### REPORT AND RECOMMENDATION

     This case has been referred to the undersigned magistrate judge under the authority of 28 U.S.C. § 636(b) and Local Rules 72.1(A), 72.2(D), and 72.3 of the Northern District of Florida pertaining to review of administrative determinations under the Social Security Act ("the Act") and related statutes, 42 U.S.C. § 401, *et seq*.  It is now before the court pursuant to 42 U.S.C. § 405(g) for review of the final determination of the Commissioner of the Social Security Administration ("the Commissioner" of the "SSA") denying Plaintiff's application for disability insurance benefits ("DIB") under Title II of the Act, 42 U.S.C. §§ 401–34.

     Upon consideration, this court concludes Plaintiff has failed to show that the Commissioner's final determination is not based on proper legal principles and substantial evidence.  The court therefore recommends that the decision of the Commissioner be affirmed.

I.     PROCEDURAL HISTORY

     In connection with injuries she sustained in a February 1994 automobile accident, Plaintiff was awarded a closed period of disability benefits under Title II from April 1996 through August 31, 1998, on which latter date her benefits were terminated due to medical improvement (*see* Tr. 9

at 19).¹  Plaintiff did not appeal this decision.  On March 10, 2004, Plaintiff filed a new application for disability benefits (*id.*).²  This application was denied initially and on reconsideration.  Plaintiff requested review of the unfavorable determination by an administrative law judge ("ALJ").  Following a hearing, the ALJ found that Plaintiff was not disabled from March 27, 1997, her alleged onset date, through September 30, 2003, her date last insured ("DLI").  The Appeals Council remanded the case for an additional hearing, which was held on June 10, 2009, before a different ALJ.  Plaintiff was represented by counsel at the hearing and testified.  At the request of the ALJ a medical expert ("ME") and a vocational expert ("VE") also testified.  On September 28, 2009, the ALJ issued a decision denying Plaintiff benefits for the period November 1, 1998 (determined to be the first date after Plaintiff's benefits had ceased on August 31, 1998, that she would again be eligible to receive DIB) through September 30, 2003 (Plaintiff's DLI) ("the relevant period") (Tr. 19–32).  The Appeals Council denied Plaintiff's request for review, thus rendering the ALJ's September 28, 2009, unfavorable determination the final decision of the Commissioner and subject to judicial review (Tr. 9–10).  Ingram v. Comm'r of Soc. Sec. Admin., 496 F.3d 1253, 1262 (11th Cir. 2007); Falge v. Apfel, 150 F.3d 1320 (11th Cir. 1998).  This appeal timely followed.

II.   FINDINGS OF THE ALJ

In his September 28, 2009, decision the ALJ made the following findings:

1) Plaintiff last met the insured status requirements of the Act on September 30, 2003.

2) Plaintiff did not engage in substantial gainful activity from November 1, 1998, through September 30, 2003.

3) Through her DLI, Plaintiff had the following severe combination of impairments: status post motor vehicle accident with multiple

---

¹ All references to "Tr." refer to the transcript of the SSA record filed on June 20, 2011 (Doc. 9).  The cited page numbers refer to those found in the upper right-hand corner of each page of the transcript rather than those assigned by the court's electronic docketing system.

² According to the ALJ's decision, in 2004 Plaintiff became concerned that when she turned fifty-nine years of age her long term disability insurance benefits from her disability insurance company would stop, "leaving her with a gap of income until she is old enough to receive early retirement benefits" under the SSA at age sixty-two (Tr. 26).  Plaintiff filed the 2004 application as required by her insurance company (Tr. 25).

      musculoskeletal fractures of the femurs, tibia and pelvis and left hip with residual chronic pain and hypothyroidism.

4) Through her DLI, Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment.

5) Through her DLI, Plaintiff had the residual functional capacity ("RFC") to perform some kinds of light work, except that she could lift and carry twenty pounds occasionally and ten pounds or less more frequently. Plaintiff could sit, stand, or walk for at least six hours each during an eight-hour workday, and she could push and pull up to the weight limits noted, operate foot controls without difficulty, and drive a motor vehicle without limitation. She could occasionally stoop, but she could not climb ladders, ropes, or scaffolds. Plaintiff had no manipulative or communicative problems, and she had no severe mental impairment.

6) Through her DLI, Plaintiff was capable of performing her past relevant work as a civil drafter. This work did not require the performance of work-related activities precluded by Plaintiff's RFC.

7) Plaintiff was not under a disability, as defined in the Act, at any time from November 1, 1998, through September 30, 2003.

## III. STANDARD OF REVIEW

Review of the Commissioner's final decision is limited to determining whether the decision is supported by substantial evidence in the record and was a result of the application of proper legal standards. Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991) ("[T]his Court may reverse the decision of the [Commissioner] only when convinced that it is not supported by substantial evidence or that proper legal standards were not applied."); *see also* Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987). "A determination that is supported by substantial evidence may be meaningless . . . if it is coupled with or derived from faulty legal principles." Boyd v. Heckler, 704 F.2d 1207, 1209 (11th Cir. 1983), *superseded by statute on other grounds as stated in* Elam v. R.R. Ret. Bd., 921 F.2d 1210, 1214 (11th Cir. 1991). As long as proper legal standards were applied, the Commissioner's decision will not be disturbed if in light of the record as a whole the decision appears to be supported by substantial evidence. 42 U.S.C. § 405(g); Falge, 150 F.3d at 1322; Lewis, 125 F.3d at 1439; Foote v. Chater, 67 F.3d 1553,

1560 (11th Cir. 1995).  Substantial evidence is more than a scintilla, but not a preponderance; it is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 59 S. Ct. 206, 217, 83 L. Ed. 126 (1938)); Lewis, 125 F.3d at 1439.  The court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner.  Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (citations omitted).  Even if the evidence preponderates against the Commissioner's decision, the decision must be affirmed if supported by substantial evidence.  Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986).

The Act defines a disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  To qualify as a disability the physical or mental impairment must be so severe that the claimant is not only unable to do her previous work, "but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  Id. § 423(d)(2)(A).

Pursuant to 20 C.F.R. § 404.1520(a)–(g), the Commissioner analyzes a disability claim in five steps:

1. If the claimant is performing substantial gainful activity, she is not disabled.

2. If the claimant is not performing substantial gainful activity, her impairments must be severe before she can be found disabled.

3. If the claimant is not performing substantial gainful activity and she has severe impairments that have lasted or are expected to last for a continuous period of at least twelve months, and if her impairments meet or medically equal the criteria of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, the claimant is presumed disabled without further inquiry.

4. If the claimant's impairments do not prevent her from doing her past relevant work, she is not disabled.

5. Even if the claimant's impairments prevent her from performing her past relevant work, if other work exists in significant numbers in the national economy that accommodates her RFC and vocational factors, she is not disabled.

The claimant bears the burden of establishing a severe impairment that keeps her from performing her past work. 20 C.F.R. § 404.1512. If the claimant establishes such an impairment, the burden shifts to the Commissioner at step five to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform. MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986). If the Commissioner carries this burden, the claimant must then prove she cannot perform the work suggested by the Commissioner. Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).

IV. BACKGROUND

A. Plaintiff's Education and Employment History

Plaintiff was born on March 23, 1953 (Tr. 446), making her forty-five years of age as of November 1, 1998. She has a general equivalency diploma with vocational training in drafting and past relevant work as a civil drafter (Tr. 110, 557).

B. Plaintiff's Medical History

Before outlining Plaintiff's medical history, the court must address her counsel's memorandum, filed in response to the court's June 20, 2011, Scheduling Order (Doc. 10). In that Order, the court gave the parties clear instructions regarding the filing of memoranda in support of their respective positions. With respect to Plaintiff, the court directed her counsel to file a memorandum that set forth Plaintiff's legal contentions and "specifically cite[d] the record by page number for factual contentions." (Doc. 10 at 1, emphasis in original). The court further instructed that the "[f]ailure . . . to support factual contentions with accurate, precise citations to the record will result in the contention(s) being disregarded for lack of proper development." (Id. at 2, emphasis in original). In her instant memorandum Plaintiff cites the record for factual contentions by page number with respect to her hearing testimony, the ALJ's decision, and her work history (see Doc. 11 at 4, 6–11). With respect to the medical evidence, however, she does not do the same. Indeed, Plaintiff fails to make a single specific citation to the medical record by page number for her factual contention that her "subjective testimony is supported by medical evidence . . . ." (Doc. 11 at 12).

As just noted, such failure results in the court's disregarding this particular contention for lack of proper development. Nevertheless, to present a backdrop for Plaintiff's legal argument that the ALJ improperly rejected her subjective testimony, in very abbreviated form the court discusses the medical evidence below, essentially as the ALJ has outlined it in his decision.

The ALJ examined the records of Keith Granger, M.D., a treating physician, and Thomas Derbes, M.D., an examining physician. Although the ALJ reviewed the records of these physicians he did not take their records into consideration when reaching his disability determination because he concluded the assessments were conducted during the time when Plaintiff had previously been adjudicated disabled. Thus, they did not pertain to the relevant period then under review of November 1, 1998, through September 30, 2003. Nevertheless, the ALJ noted that Dr. Granger's assessment, from March 1997, indicated that Plaintiff had chronic severe pain in her hips, radiating to both legs, which resulted from the multiple pelvic fractures she had sustained [from the February 1994 automobile accident (*see* Tr. 182)] and was "probably just post traumatic arthrosis from such." (Tr. 184). Dr. Granger opined that there was not much else to do for Plaintiff at that time, although he thought that non-steroidal and anti-inflammatory medications, as well as activity, might be helpful (*id.*). In May 1997 Dr. Granger stated in a letter he believed that due to chronic severe pain in the hips, pelvis, low back, and legs Plaintiff was unable to be gainfully employed and her prognosis for improvement was poor (Tr. 182). Dr. Derbes examined Plaintiff in September 1997. In Dr. Derbes' opinion, Plaintiff suffered from chronic intractable pain for which there were "objective reasons"; he noted that he was surprised that Plaintiff had been able to return to work at all, given the extent of her injuries, and he supported prescribing a limited quantity of opioids for pain management (Tr. 159). He also found it appropriate to defer to Dr. Granger's disability opinion in light of his long experience treating Plaintiff (*id.*).

The ALJ also reviewed the records of Jerry Marsella, M.D., another of Plaintiff's treating physicians. Dr. Marsella evaluated Plaintiff in April 1998 for chronic pain (Tr. 213–15). His impression was status post multiple fractures secondary to motor vehicle accident, with chronic pain secondary to the multiple fractures (Tr. 214). In August 1998 Dr. Marsella noted that Plaintiff—who at the time was taking numerous medications—reported "some change and improvement in her pain management" and satisfaction "with the level of pain relief that she is

achieving." (Tr. 204). Plaintiff reported in October 1998 that she was doing well on her medications (Tr. 424). In December 1998 she indicated she felt "much, much better," in part because her family was with her for the holidays (Tr. 423). Her pain relief reportedly was improved, but she requested and received a slight increase in the number of pain pills she received each month (*id.*). Plaintiff reported to Dr. Marsella that her pain level was 4/10, "which is much improved" (Tr. 422). She also reported "pain all over but [noted] this is much, much better than usual" (*id.*). Based on his physical findings and Plaintiff's complaints, including right elbow pain and jaw stiffness, Dr. Marsella's impressions were pronator tendinitis, temporomandibular joint dysfunction, and leg and back pain (*id.*). In October 1999 Dr. Marsella noted that Plaintiff was "doing very well on her usual medications" and that she "continues to function at a reasonably high level and will continue to do so" (Tr. 420). Dr. Marsella, while noting in December 1999 that Plaintiff continued to have chronic pain as a result of her 1994 automobile accident injuries, reported that physical examination revealed a patient who "ambulate[d] well" and whose extremities "reveal[ed] full active range of motion" (Tr. 419). In February 2000 Dr. Marsella discussed with Plaintiff the overuse of medication and switched her to Methadone from Lortab (Tr. 418). During a June 2000 visit Dr. Marsella briefly recited Plaintiff's medical history pertaining to her automobile accident injuries, including that subsequently she had "maintained a fairly significant level of pain" (Tr. 417). Nevertheless, according to Dr. Marsella's report, Plaintiff was doing well on her current medication regimen (*id.*). Likewise, in August 2000 Plaintiff also reportedly was doing well on her medications (Tr. 415). Physical examination at that time revealed that Plaintiff walked with a slightly antalgic gait and had some low back pain and tenderness. "Otherwise she [was] doing fairly well with no other noticeable physical findings of significance." (*Id.*). In November 2000 Dr. Marsella noted that Plaintiff reported increased pain, apparently related to increased activity necessitated by planning a funeral; Plaintiff's pain was expected to diminish when Plaintiff resumed her normal routine (Tr. 413). Dr. Marsella noted in August 2001 that Plaintiff continued to complain of a significant level of low back pain and hip and leg pain as a result of her automobile accident injuries (Tr. 200). Damp weather and increased activity were factors that exacerbated Plaintiff's pain, while decreased activity and pain medications improved it. As Methadone was not helping Plaintiff very much at that time, and Lorcet had previously worked reasonably well for her, she was prescribed Lorcet instead (*id.*). Dr.

Marsella directed Plaintiff to return in three months (Tr. 201). Dr. Marsella saw Plaintiff for hip, leg, and/or back pain in May 2002, September 2002, and February 2003, when her pain medications were renewed (Tr. 193, 197, 199). At Plaintiff's August 2003 visit, Dr. Marsella assessed hip pain and chronic back pain, with the notation that Plaintiff was "doing well [with] med." (Tr. 194). The ALJ gave substantial weight to the records of Dr. Marsella (Tr. 31).

The administrative file also contains the records and disability opinions of Leisa Bailey, M.D., who treated Plaintiff for pain over the course of ten office visits occurring from January 2001 to May 2004. The ALJ reviewed these documents but discounted Dr. Bailey's disability opinions, stating they were unsupported by her medical records and treatment notes and appeared to be predominantly based on Plaintiff's subjective complaints; the ALJ also noted that Dr. Bailey's opinions were inconsistent with Dr. Marsella's records for the same time period, which records showed that Plaintiff had normal neurological and musculoskeletal exams and was doing fairly well on her medications (*see* Tr. 27–30). The ALJ also rejected the February 2009 disability opinion offered by treating physician Lauro Lapuz, M.D. (Tr. 28–30; Tr. 368–74). The ALJ noted that, with respect to both Dr. Bailey and Dr. Lapuz, their medical records contained generalized descriptions which did not clearly identify Plaintiff's problems and the objective findings that led to the physicians' conclusions that Plaintiff was significantly limited. Accordingly, the ALJ found, he was unable to relate Plaintiff's problems back to the period prior to the expiration of her DLI (Tr. 28). The ALJ also commented that Dr. Lapuz' opinion constituted an "outright misstatement of facts as there is no indication that the claimant would even come close to meeting Listing 1.04 [20 C.F.R. Pt. 404, Subpt. P, App. 1, Pt. A. § 1.04, Disorders of the Spine] as she has no disorder under that listing." (Tr. 29). Moreover, there was no evidence of significant reflex, muscle, motor or sensory deficits of the lower extremities and no ongoing evidence of joint crepitus, effusion, joint instability, or loss of range of motion (*id.*). Although the ALJ rejected Dr. Bailey's and Dr. Lapuz' disability opinions because he concluded they were not bolstered by the evidence, the evidence in fact supported contrary findings, and their opinions were conclusory or inconsistent with their own records (Tr. 29–30), he did give significant weight to Dr. Bailey's treatment and patient telephone records. The ALJ described these records as being inconsistent with Dr. Bailey's disability opinions and reflected some misuse by Plaintiff of her pain medications (Tr. 31). Also, as to Dr. Lapuz, the

ALJ noted that he did not treat Plaintiff until after her DLI and was not in a position to offer an opinion on Plaintiff's medical status prior to September 2003 (*id.*). Thus, the ALJ rejected the opinions of both Dr. Bailey and Dr. Lapuz.

The ALJ also considered, but gave little weight to, the statements of Plaintiff's daughters and husband. They reported that Plaintiff experienced limitations but also stated that Plaintiff was able to garden, sew, drive a car, and otherwise "accomplish quite a bit" by herself (Tr. 28). The ALJ gave "the greatest weight" to the hearing testimony of the ME, Charles I. Hancock, M.D., an orthopedic specialist, whose testimony is summarized below.

C.    Hearing Testimony

Dr. Hancock testified on direct examination by the ALJ that in her 1994 automobile accident Plaintiff suffered severe fractures of the pelvis, both femurs, and one tibia (Tr. 509). The femur fractures had been surgically repaired by intermedullary fixation with the use of pins and screws; the pelvic and tibial fractures were also surgically repaired (Tr. 510). According to Dr. Hancock, as far as fractures go, Plaintiff had been fortunate to have sustained only non-articulated and non-displaced fractures to the pelvis without neurological deficit as this type of fracture tended to minimize the development of post-traumatic arthritis (*id.*). None of her pelvic fractures involved the hip joints or the sacroiliac joint, nor did the long bone fractures involve joints (Tr. 512). Dr. Hancock questioned the etiology of Plaintiff's continued pain, given that all of the fractures reportedly were healed and the hardware had been removed (Tr. 510). Also, the only range of motion discrepancy noted in Plaintiff's records was a one-time mention that she lacked fifteen degrees of flexion in one knee, which in any event Dr. Hancock thought should cause no significant long-term impairment (*id.*). Dr. Hancock found no basis for Plaintiff's being unable to sit, stand, or walk for an extended period (Tr. 511). He noted that Plaintiff reported persistent pain but that he could find no objective evidence in her medical record—such as in the form of x-rays, magnetic resonance imaging, computerized tomography scans, or serologic testing—that might suggest joint inflamation, joint involvement, or arthritis related to the automobile accident injuries (Tr. 513). There were no reports of significant signs or symptoms of permanent arthritis in either hip, the affected knee, or the sacroiliac joint (*id.*). According to Dr. Hancock, there was nothing objective in Dr. Bailey's notes that would account for the severe degree of functional limitation she had found;

rather, Dr. Bailey's diagnosis of chronic pain syndrome appeared to be based on Plaintiff's subjective complaints (Tr. 513–14; 517).  Dr. Hancock did not minimize the significant injuries that Plaintiff had suffered but stated he could not explain, based on Dr. Bailey's reports, why Plaintiff would continue to complain of intractable pain (Tr. 515).   Also, Dr. Hancock located no objective evidence that would support Dr. Lapuz' opinion that Plaintiff was disabled from leg pain resulting from her injuries or that she had a disabling back impairment (Tr. 519–24).[3]   Under cross examination by Plaintiff's counsel, Dr. Hancock testified that although he could find no basis for Plaintiff's persistent reports of severe pain, "[t]hat doesn't mean she doesn't have pain, just that I don't find any rationale for it." (Tr. 528).

In response to questioning by the ALJ, Plaintiff testified that she "hurt[s] extensively," especially from her waist to the bottom of her feet "quite often, almost continually" (Tr. 539). During the period relevant to her current claim for DIB, Plaintiff stated, it would take her about an hour after awakening in the morning to be able to move about enough to prepare something to eat and perform some household chores such as wash a few dishes, do some laundry, sweep, or make a bed (Tr. 542–43).  Sometimes she had to let things sit for awhile so she could lie down, and if necessary she would cook or wash dishes while sitting on a bar stool (Tr. 543).  Plaintiff estimated that she could sit about thirty minutes before needing to stand (Tr. 545).  She thought she could walk at a normal pace for about twenty-five to fifty yards before needing to stop due to pain in her left hip that radiated to her leg (*id.*).  According to Plaintiff, she could comfortably lift and carry about four or five pounds (Tr. 546).  During the relevant period, Plaintiff spent her time reading, watching television, listening to tapes, watering the plants on her porch, occasionally attending church and shopping, and visiting with friends and family (Tr. 546–48).  In response to questioning by her attorney, Plaintiff testified that pain prevented her from giving an employer a "good day" of work (Tr. 550).  She thought she might have been able to work "one day reasonably . . . but then I would be off two or three, to a week.  I cannot sit there and stay." (*Id.*).  Plaintiff explained that her hands, the "whole area" around her hips, her knees, and her feet hurt (*id.*).  On average, her pain had been

---

[3] Dr. Hancock further testified that Plaintiff had limitations consistent with the ability to perform a range of medium work (Tr. 525–26). The ALJ determined, however, that Plaintiff retained the RFC only to perform some kinds of light work (*see* Tr. 22).

7/10 (*id.*).  Lying on the couch with pillows under her knees might ease the pain; medication also helped but Plaintiff stated she did not "want to take more medication than is necessary . . . ." (*Id.*). Rainy weather increased Plaintiff's pain; additionally, being on her feet could cause the pain to worsen (Tr. 551).  When Plaintiff's pain was exacerbated, she also experienced tenderness and swelling in her abdomen (*id.*).

The VE testified that Plaintiff's past work as a civil engineer technician, or civil drafter, was classified as sedentary work (Tr. 557).  Posing a hypothetical question to the VE, the ALJ described an individual of Plaintiff's age, education, and vocational history during the period relevant to her current application.  The individual had the ability to perform a full range of light work.  She could sit, stand, or walk for at least six hours in an eight-hour day; lift twenty pounds occasionally and ten pounds or less more frequently; push and pull up to twenty pounds; operate foot pedal controls; and operate a car without restriction.  The individual could stoop occasionally but could not climb ropes, ladders, and scaffolds.  She had no other environmental, communicative, or manipulative limitations and no severe mental impairments (Tr. 558).  The VE testified that such an individual could perform Plaintiff's past relevant work as a civil drafter, either as Plaintiff had performed it or as it is customarily performed (Tr. 559).

V.    ISSUE PRESENTED

Seeking an order reversing the Commissioner's decision and an award of benefits or, alternatively, remand for further administrative proceedings, Plaintiff presents only one ground for relief: that the ALJ failed to provide legally sufficient reasons to reject her subjective testimony that pain rendered her unable to perform substantial gainful activity during the relevant period (*see* Doc. 11 at 4, 6–12).  The Commissioner responds that the ALJ properly considered Plaintiff's credibility concerning her complaints of pain and limitations (Doc. 12 at 4).  According to the Commissioner, the decision should be affirmed because Plaintiff had a fair hearing, her claims were considered in accordance with applicable statutes and regulations, and substantial evidence supports the unfavorable determination (*id.* at 11).

VI.    DISCUSSION

To establish disability based on testimony concerning pain or other subjective symptoms, the claimant must satisfy a three-part "pain standard."  Wilson v. Barnhart, 284 F.3d 1219, 1225

(11th Cir. 2002). A claimant must show evidence of an underlying medical condition and either (a) objective medical evidence that confirms the severity of the alleged pain stemming from that condition, or (b) that the objectively determined medical condition is so severe that it can reasonably be expected to cause the alleged pain. *Id.*; *see also* Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991) (stating that this "standard also applies to complaints of subjective conditions other than pain"). If the ALJ determines that the claimant has a medically determinable impairment that could reasonably be expected to produce the pain, he must then evaluate the extent to which the intensity and persistence of the pain limits the claimant's ability to work. 20 C.F.R. § 404.1529(b). At this stage, the ALJ may consider the claimant's history, the medical signs and laboratory findings, the claimant's statements, statements by treating and non-treating physicians, and other evidence relating to how the pain affects the claimant's daily activities and ability to work. § 404.1529(c).

"While both the Regulations and the Hand [v. Bowen, 793 F.2d 275, 276 (11th Cir. 1986)] standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, neither requires objective proof of the pain itself." Elam, 921 F.2d at 1215. The Eleventh Circuit has held that "pain alone can be disabling, even when its existence is unsupported by objective evidence." Foote v. Chater, 67 F.3d 1553, 1561 (11th Cir. 1995) (citations omitted). The presence or absence of evidence to support symptoms of the severity claimed, however, is a factor that can be considered. Marbury v. Sullivan, 957 F.2d 837, 839–40 (11th Cir. 1992); Tieniber v. Heckler, 720 F.2d 1251, 1253 (11th Cir. 1983). If the Commissioner refuses to credit subjective testimony of the plaintiff concerning pain he must do so explicitly and give reasons for that decision that are based on substantial evidence. MacGregor, 786 F.2d at 1054; Wilson, 284 F.3d at 1225–1226; Jones v. Department of Health and Human Services, 941 F.2d 1529, 1532 (11th Cir. 1991). Where the Commissioner fails to do so, as a matter of law the testimony should be accepted as true. Holt, 921 F.2d at 1223; MacGregor, 786 F.2d at 1054.

Underlying the Hand standard is the need for a credibility determination concerning a plaintiff's complaints of pain. Those complaints are, after all, subjective. "[T]he ascertainment of the existence of an actual disability depend[s] on determining the truth and reliability of [a claimant's] complaints of subjective pain." Scharlow v. Schweiker, 655 F.2d 645, 649 (5th Cir.

1981) (holding that the ALJ must resolve "the crucial subsidiary fact of the truthfulness of subjective symptoms and complaints").[4]  People with objectively identical conditions can experience significantly different levels of pain, and pain is more readily treated in some than in others. "Reasonable minds may differ as to whether objective medical impairments could reasonably be expected to produce [the claimed] pain.  This determination is a question of fact which, like all factual findings by the [Commissioner], is subject only to limited review in the courts . . . ." Hand, 793 F.2d at 1548–49.  It is within the ALJ's "realm of judging" to determine whether "the quantum of pain [a claimant] allege[s][is] credible when considered in the light of other evidence." Arnold v. Heckler, 732 F.2d 881, 884 (11th Cir. 1984).  Thus, a physician may be told by a patient that she is in pain, and the physician may believe it, but the ALJ is not bound by that.  The evidence as a whole, including the existence of corroborating objective proof or the lack thereof, and not just a physician's belief or the plaintiff's claims, is the basis for the ALJ's credibility determination.

In this case, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause "*some* of the alleged symptoms" (*see* Tr. at 24 (emphasis added)). He further found, however, that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (*Id.*).  The ALJ elaborated that while Plaintiff may have

> some mild to moderate pain, considering its effects, and the effects of her medications, it is not so debilitating that it precludes all work activity and the claimant was still capable of performing the residual capacity delineated above through her date last insured [ ].
>
> * * *
>
> The record shows that claimant continued to work for several years while experiencing the pain she now alleges is disabling and did so while taking pain medication.  Moreover, as Dr. Hancock testified and for all the reasons set forth above, the record evidence does not support the severity of the claimant's alleged chronic pain or otherwise establish a medical condition of such severity that it could reasonably be expected to give rise to the alleged debilitating pain.

(Tr. at 30).

---

[4] Decisions of the United States Court of Appeals for the Fifth Circuit decided prior to September 30, 1981, are binding precedent in the Eleventh Circuit. Bonner v. Pritchard, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).


Plaintiff argues that the ALJ "failed to articulate any rationale sufficient to demonstrate Ellen Morris was anything other than credible" when she testified that she suffered from disabling pain (Doc. 11 at 7). In particular, Plaintiff complains that the ALJ's finding that she continued to work for several years after her 1994 automobile accident is not a valid reason to reject her pain testimony (*id.* at 9). To the contrary, Plaintiff asserts, her positive work history—which reflects continuous employment for twenty-two of the twenty-four years prior to the onset of her disability, including the two-year period after her 1994 accident—supports her credibility. According to Plaintiff, the ALJ improperly and "perversely hold[s] that stellar work ethic against" her (*id.*).

The court concludes that substantial evidence supports the ALJ's credibility determination. Although Plaintiff complains that it was improper for the ALJ to rely on the fact that for nearly two years following her accident she was able to return to work, the court disagrees. That Plaintiff was able to perform substantial gainful activity from 1994 to1996, while on pain medication, is relevant to the credibility of her testimony that from November 1998 to March 2003, under apparently similar circumstances, she was unable to do so. Moreover, the ALJ did not simply rely on the fact that Plaintiff was able to work after her accident to find that her testimony of disabling pain during the relevant period was not fully credible. He additionally cited the opinion of Dr. Hancock, who testified at the hearing that, based on the medical evidence he had reviewed, there was no medical rationale to explain Plaintiff's complaints of continued intractable pain, given the nature of her injuries, physical findings on examination, or other objective evidence (Tr. 28–29; 510–15; 519–24). Additionally, the ALJ considered the statements from Plaintiff's family, which he found described activities Plaintiff was able to do which were consistent with the ability to perform at least sedentary work activities (Tr. 28) and thus inconsistent with Plaintiff's pain testimony. The ALJ also noted that Plaintiff's allegedly intractable pain had not prevented her in the past from admittedly giving some of her pain medication away to family members (Tr. 28, 30).

In making his credibility determination the ALJ also relied on the medical records from Dr. Marsella, which generally reflect reports of adequate pain management during the relevant period of November 1, 1998, through September 30, 2003. For example, on August 4, 1998—or approximately three months prior to the commencement of the relevant period—Dr. Marsella noted that Plaintiff was satisfied with her level of pain relief (Tr. 204). In October 1998 and December

1998 Plaintiff reportedly was doing well on her medications (Tr. 423, 424). Dr. Marsella also stated, in October 1999, that Plaintiff "continues to function at a reasonably high level and will continue to do so" (Tr. 420). Although in December 1999 Dr. Marsella noted Plaintiff's complaints of chronic pain, he found Plaintiff could ambulate well and her extremities had a full active range of motion (Tr. 419). Dr. Marsella noted in February 2000 that Plaintiff experienced "a fairly significant level of pain" but that she was doing well on her current drug regimen (Tr. 417). In August 2000 Plaintiff also reportedly was doing well on her medications; and, despite a slightly antalgic gait and some low back pain and tenderness, she was "doing fairly well with no other noticeable physical findings of significance." (Tr. 415). Dr. Marsella's additional clinical records, from August 2001 to February 2003, reflect Plaintiff's continued reports of back, hip, and leg pain, for which she obtained repeated medication renewals (*see* Tr. 193, 197, 199, and 200). On August 11, 2003, which was approximately six weeks prior to the conclusion of the relevant period on September 30, 2003, Dr. Marsella noted that Plaintiff was "doing well [with] med." (Tr. 194). The Eleventh Circuit has stated that "[a] medical condition that can reasonably be remedied either by surgery, treatment, or medication is not disabling." Dawkins v. Bowen, 848 F.2d 1211, 1213 (11th Cir. 1988). Dr. Marsella's records, which suggest that Plaintiff's chronic pain during the relevant period was managed reasonably well by medication, further support the ALJ's conclusion that Plaintiff's pain testimony was not entirely credible.

      Plaintiff makes no argument (much less a corroborating citation to the record) that the ALJ improperly rejected the disability opinions of Drs. Granger, Derbes, Bailey, and Lapuz or that he should not have largely accepted the opinion of the ME, Dr. Hancock. Accordingly, the court need not address these matters. The court notes in passing, however, that substantial evidence supports the ALJ's determinations.

      Under what is known as the "treating physician rule," the ALJ must accord substantial or considerable weight to the opinion, diagnosis, and medical evidence of a treating physician absent a showing of "good cause" to the contrary. Phillips v. Barnhart, 357 F.3d 1232, 1240 (11th Cir. 2004) (citation omitted). The ALJ may accept the opinion of a consultative examining physician but that opinion is not owed the same level of deference that is due to that of a treating physician. Wilson v. Heckler, 734 F.2d 513, 518 (11th Cir. 1984). Where an ALJ articulates specific reasons

for failing to accord the opinion of a treating or examining physician controlling weight and those reasons are supported by substantial evidence, there is no reversible error. Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. 2005). The opinion of a non-examining physician is entitled to little weight if it contradicts the opinion of an examining physician which the ALJ must accept. Lamb v. Bowen, 847 F.2d 698, 703 (11th Cir. 1988). Where there is no such conflict, however, the ALJ does not err in relying on the opinion of a non-examining physician. See Edwards v. Sullivan, 937 F.2d 580, 584–85 (11th Cir. 1991).

Here, as the ALJ noted, the disability opinions of Drs. Granger and Derbes were offered during the period of time in which Plaintiff had already been adjudicated disabled. The court perceives no error in the ALJ's declining, therefore, to rely on them with respect to the instant application. Additionally, the ALJ properly concluded that Dr. Bailey's disability opinions were not supported by her medical records and treatment notes and were inconsistent with Dr. Marsella's contemporaneous records. Similarly, the ALJ was not required to accept Dr. Lapuz' disability opinion, which also was not supported by the medical evidence.

For all of the foregoing reasons, the court concludes that the ALJ's articulated basis for discrediting Plaintiff's pain allegations is adequately supported by substantial evidence in the record as a whole. See MacGregor, 786 F.2d at 1054 (indicating that where Commissioner refuses to credit a plaintiff's subjective testimony he must do so explicitly and provide reasons for the ruling that are based on substantial evidence). Indeed, it was within the ALJ's "realm of judging" to find that the quantum of pain Plaintiff alleges was not credible when considered in light of all of the other evidence. Arnold, 732 F.2d at 884. The ALJ therefore was entitled to determine that Plaintiff's allegations concerning pain were inconsistent with the alleged severity of impairments and claimed limitations.[5]

VII. CONCLUSION

---

[5] Even if the court had concluded there was a preponderance of evidence against the ALJ's credibility determination, because there is substantial evidence which supports it, the determination should not be disturbed. See Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) ("We may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner]. Even if we find that the evidence preponderates against the [Commissioner's] decision, we must affirm if the decision is supported by substantial evidence.").

For the foregoing reasons, this court concludes Plaintiff has failed to show that the Commissioner's decision is not supported by substantial evidence. 42 U.S.C. § 405(g); Lewis, 125 F. 3d at 1439; Foote, 67 F.3d at1560. Furthermore, Plaintiff has failed to show that the ALJ applied improper legal standards, erred in making his findings, or that any other ground for reversal exists. The court therefore recommends that the Commissioner's decision denying benefits be affirmed.

Accordingly, it is respectfully **RECOMMENDED** that the decision of the Commissioner be **AFFIRMED**, that this action be **DISMISSED,** and that the clerk be directed to close the file.

At Pensacola, Florida this 16th day of April 2012.


/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**


**NOTICE TO THE PARTIES**
**Any objections to these proposed recommendations must be filed within fourteen (14) days after being served a copy hereof. Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control. A copy of any objections shall be served upon any other parties. Failure to object may limit the scope of appellate review of factual findings. *See* 28 U.S.C. § 636; United States v. Roberts, 858 F.2d 698, 701 (11th Cir. 1988).**